**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**LLOYD LONG III, ESQUIRE**
**Pennsylvania Attorney ID No. 92934**
**Krasner, Hughes & Long, LLC**
**1221 Locust Street, Suite 301**
**Philadelphia, PA 19107**

**Attorney for Plaintiff**

---

| | | |
|---|---|---|
| **Raul Reyes** | : | |
| | : | |
| c/o  **Krasner, Hughes, & Long, LLC** | : | |
| **1221 Locust St., Suite 301** | : | |
| **Philadelphia, PA 19107** | : | |
| | : | |
| **Plaintiff** | : | |
| **v.** | : | |
| | : | |
| **Commissioner Charles Ramsey;** | : | |
| | : | |
| **Deputy Police Commissioner Kevin Bethel;** | : | |
| | : | |
| **Captain William V. Fisher** | : | No. 13- |
| **Badge No. 82;** | : | |
| | : | |
| **Police Officer Joseph Sposato** | : | **JURY TRIAL DEMANDED** |
| **Badge No. 5368;** | : | |
| **Police Officer Darryl Crawford** | : | |
| **Badge No. 7332;** | : | |
| | : | |
| **Police Officer Rhonda C. Smith** | : | |
| **Badge No. 1373;** | : | |
| | : | |
| **Police Officer Darrell Sampson** | : | |
| **Badge No. 8036;** | : | |
| | : | |
| **Police Officer Angel Ortiz** | : | |
| **Badge No. 9556;** | : | |
| | : | |
| **Police Officer Joseph Sisca** | : | |
| **Badge No. 9547;** | : | |

1

| | |
|---|---|
| **Police Officers John Doe 1-25** | : |
| **Badge Nos. Presently Unknown;** | : |
| | : |
| **Police Officers Jane Doe 1-25** | : |
| **Badge Nos. Presently Unknown;** | : |
| | : |
| **AND** | : |
| | : |
| **CITY OF PHILADELPHIA** | : |
| **A Municipal Corporation** | : |
| | : |
| **All c/o City of Philadelphia Law Dept.** | : |
| **1515 Arch St., 14ᵗʰ Floor** | : |
| **Philadelphia, PA 19107** | : |
| | : |
| **Defendants** | : |
| | : |

## COMPLAINT

## INTRODUCTION

1. The cornerstone of our constitutional democracy is firmly rooted in the right to free speech embodied by the First Amendment of the United States Constitution.  The First Amendment of the United States Constitution provides the principal bulwark against the government's power to intrude upon the free expression of ideas, particularly dissenting ideas.  Born of the struggle against tyranny over two centuries ago, the First Amendment embodies the heart and soul of our democracy; the right to speak freely, to assemble in protest, and to express shared ideas through a collective public voice.  Those voices often express unpopular, dissenting views. Drafted in 1787 and ratified by the states in 1791, the First Amendment states:

> **"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to**

> **assemble, and to petition the government for a redress of grievances.”**

U.S. CONST. amend. I

2.  Without this protection, freedom cannot survive. Ensuring that the right to political protest is protected under the First Amendment, courts of the United States have long recognized that free expression and association includes occupying public spaces in order to protest, demonstrate, march, and openly express opinions on political matters of public concern.

3.  In September of 2011, inspired by the "Arab Spring" during which thousands rose up against tyranny and oppression in the Middle East, a small group of protestors occupied a park in New York City, New York.  The original protestors came to demonstrate against the emergent corporate state and the demise of our democracy.  Emblematic of this popular outcry against corporate power, greed, and the vast inequities in wealth and power between the rich and poor in this country, was the recognition that the majority of the people in this country, the "99%", had little or no say over the decisions made by the wealthy that compromise less than "1%" of the population.   Like the spontaneous spark, a movement spread across manifesting in hundreds of Occupy encampments.

4.  Here in Philadelphia, Pennsylvania, the cradle of liberty, Occupy Philadelphia participants gathered to express their individual and collective voices regarding some of the most important political, economic and social issues of our time. As with other Occupy associations throughout this country, Occupy Philadelphia emerged as association of individuals protesting against the control that corporations have over our government, usurping our democracy. Formed spontaneously in early October 2011, the association, known as "Occupy Philly," organized as a protest gathering, frequently

3

referred to as an encampment, on Dilworth Plaza, a public forum, outside of City Hall in Philadelphia, Pennsylvania.     This gathering (or encampment) served as an ongoing demonstration in a public space, an expression of the cherished freedoms we enjoy under the First Amendment of the United States Constitution. In response, the Philadelphia Police Department, through orders from Defendant Commissioner Charles Ramsey, Deputy Commissioner Bethel, and other known and presently unknown police officials, in conjunction with federal authorities, maintained a constant presence through direct and undercover surveillance, as well as infiltration, of the Occupy Philly demonstrators during the course of the seven week protest. During this seven week gathering, there were daily organizational meetings, seminars, and marches, many originating from this public space.   These marches and demonstrations exemplified the long storied tradition of free expression, as they encompassed various matters of great public concern, such as the predatory lending practices by major banks, the fleecing of the Philadelphia School District by some of these same banks, the concentration of corporate power in companies, like Comcast, headquartered here in Philadelphia, as well as the history of police brutality experienced by the citizens of Philadelphia, and many other issues. This complaint seeks compensation for the Plaintiff for the violations of his individual rights as set forth in this complaint.

## JURISDICTION

5.  This action is brought pursuant to 42 U.S.C. § 1983, as well as the First, Fourth, and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1334(1), (3), and (4). Plaintiff further invokes the supplemental jurisdiction under 28 United States Code § 1367 (a) to hear and decide claims under state law.

## PARTIES

6.  Plaintiff, Raul Reyes, is an adult citizen who was present in Philadelphia, Pennsylvania at all times relevant to this Complaint.

7.  Defendant, Commissioner Charles Ramsey, is and was at all time relevant to this complaint Commissioner of the Philadelphia Police Department and acting under the color of state law. He is being sued both in his individual and official capacities.

8.  Defendant, Deputy Commissioner Kevin Bethel, is and was at all time relevant to this complaint a Deputy Commissioner of the Philadelphia Police Department and acting under the color of state law. He is being sued both in his individual and official capacities.

9.  Defendant, Captain William Fisher, Badge No. 82, was at all time relevant to this complaint Captain of the Philadelphia Police Department and acting under the color of state law. He is being sued both in his individual and official capacities.

10. Defendant, Police Officer Joseph Sposato, Badge No. 5368 is and was at all time relevant to this complaint a member of the Philadelphia Police Department and acting under the color of state law. He is being sued both in his individual and official capacities.

11. Defendant, Police Officer Darryl Crawford, Badge No. 7332 is and was at all time relevant to this complaint a member of the Philadelphia Police Department and acting under the color of state law. He is being sued both in his individual and official capacities.

12. Defendant, Police Officer Darrell Sampson, Badge No. 8036 is and was at all time relevant to this complaint a member of the Philadelphia Police Department and acting under the color of state law. He is being sued both in his individual and official capacities.

13. Defendant, Police Officer Angel Ortiz, Badge No. 9556 is and was at all time relevant to this complaint a member of the Philadelphia Police Department and acting under the color of state law. He is being sued both in his individual and official capacities.

14. Defendant, Police Officer Joseph Sisca, Badge No. 9547 is and was at all time relevant to this complaint a member of the Philadelphia Police Department and acting under the color of state law. He is being sued both in his individual and official capacities.

15. Defendant, Police Officer Rhonda Smith, Badge No. 1373 is and was at all time relevant to this complaint a member of the Philadelphia Police Department and acting under the color of state law.  She is being sued both in her individual and official capacities.

16. Defendant Police Officers John Doe 1-25 and Jane Doe 1-25 are and were at all time relevant to this complaint a member of the Philadelphia Police Department and acting under the color of state law.  The identities of these officers are presently unknown, but are expected to be determined with reasonably certainty during the course of discovery. They are being sued in their individual and official capacities.

17. Defendant, City of Philadelphia, Pennsylvania is a municipal corporation and the public employer of the individually named Defendants.

## FACTUAL BACKGROUND

18. Occupy Philadelphia is an association of protestors who gathered together on or about October 6, 2011 outside of City Hall in Philadelphia, Pennsylvania, to demonstrate against the vast inequity in wealth in this country. This gathering in a public space was a political statement addressing issues of great public concern and an exercise of First Amendment rights.  In the cradle of liberty, the Occupy Philly members gathered in protest to express their individual and collective voices regarding some of the most importance issues of public concern facing this nation. The Philadelphia Police, in conjunction with federal authorities, maintained constant surveillance over the protestors during the course of the seven weeks the Occupy Philly protestors demonstrated outside of City Hall's Dilworth Plaza, a public space in the heart of the Center City District in Philadelphia, Pennsylvania.  During the seven-week Occupy Philly demonstration, protestors participated in numerous peaceful marches and demonstrations throughout the City of Philadelphia. These peaceful marches and demonstrations offered protests on various matters of great public concern.  While individuals engaged in these peaceful marches throughout the City of Philadelphia, they would travel through the streets exercising their First Amendment rights, always shadowed by a massive contingent of Philadelphia police officers, including, but not limited to, officers from the Philadelphia Police Civil Affairs Unit, bicycle patrols, intelligence unit, and other uniformed as well as officers acting in an undercover capacity. The contingent of police was assisted by

various federal agencies including the FBI, Department of Homeland Security and personnel from the Federal Terrorism Task Force. Based on recent revelations, upon information and belief, Plaintiff asserts that this assistance may have included illegal surveillance by federal authorities.

19. On November 27, 2011, the Mayor of Philadelphia, Michael Nutter, along with Defendant Police Commissioner Ramsey, issued an order evicting the Occupy Philly protestors from Dilworth Plaza, a public space, adjacent to City Hall in the Center City District of Philadelphia, Pennsylvania.   In conjunction with that order, the named and unnamed Defendants, such as Commissioner Ramsey, Deputy Commissioner Bethel, Captain Fisher, and other ranking members of the Philadelphia Police Department, in coordination with federal law enforcement agencies, and others, planned the removal of the Occupy Philly protestors, including Plaintiff, from Dilworth Plaza.   This plan required coordination with various other city departments, including Philadelphia Fire Department, The Department of Licenses and Inspections, as well as the Philadelphia Department of Corrections.

20. In the early morning hours of November 30, 2011, a massive police presence was deployed to the area surrounding Dilworth Plaza.   The presence included hundreds of uniformed police officers from various units as well as Philadelphia Fire Department personnel.   The police blocked off the adjacent streets surrounding City Hall, which included but was not limited to JFK Boulevard, 15th Street, Market Street and 16th Street all the way to Chestnut Street, as well as the south entrance to Broad Street.   This deployment served as a "blockade" of the public space known as Dilworth Plaza, trapping anyone in and around that location.   This blockade was designed to remove by force, or

"evict" all of the Occupy Philly protestors who had been exercising their First Amendment rights during the previous seven weeks.  This plan included the physical destruction of the encampment, and all personal property contained therein, as well as the arrest of demonstrators.

21. At approximately 1:30 a.m. on November 30, 2011, as the Philadelphia police officers moved in to the Dilworth Plaza, they discovered that the encampment had been vacated by the Occupy Philly protestors, many of whom had gathered near the corner of 15th and Market Streets.  Once Philadelphia police officers had entered Dilworth Plaza they began tearing down the tents that had been used during the previous weeks as part of the ongoing Occupy protest.

22. Shortly after numerous Philadelphia police officers swept through Dilworth Plaza, two plaintiffs in a related action, James Savage and T.J. Ghose, standing with other protestors in the area of 15th and Market Streets, expressing their First Amendment rights, were thwarted in their protest by the police as they were unlawfully arrested by Defendant Officers.

23. The arrests of James Savage and T.J. Ghose were the first of many causing the deprivation of First Amendment rights that night; numerous arrests were subsequently conducted without probable cause or legal justification.

24. Following the police entry onto Dilworth Plaza, a large group of protestors began a march through Center City.  Followed by a massive contingent of Philadelphia Police on foot, bicycles and in vehicles, the protest eventually headed north on Broad Street for several blocks to Spring Garden Street in Philadelphia.  Upon reaching Spring Garden

Street, the protest march continued west on Spring Garden and then south on 15th Street, and included Plaintiff.

25. When the protestors, including Plaintiff, reached the intersection of 15th and Hamilton Streets in Philadelphia, Pennsylvania, they were met by a large contingent of police officers. Behind the marchers, police had stationed vehicles, as well as another large contingent of police officers blocking their movement toward Spring Garden Street. Boxed in by the Philadelphia police officers in the front and rear, with buildings on either side, the marchers, including Plaintiff, were physically trapped by a police blockade.

26. At some point earlier in the evening, high ranking police officials, including Defendant Commissioner Ramsey, Deputy Commissioner Bethel, Deputy Chief Inspector John Doe, Deputy Commissioner John Doe, Captain William Fisher of the Civil Affairs Unit, made the decision to arrest the protestors, based solely upon the anticipated march or marches that followed the forced removal of the Occupy Philly encampment from the public space known as Dilworth Plaza. The decision to arrest the marchers, including Plaintiff, was not based on the commission of any crime, but rather on their continued peaceful expression of First Amendment rights.

27. Despite the history of peaceful protest marches throughout the Occupy Philly encampment, Plaintiff and others were confronted by the lines of police officers, many with bicycles placed strategically in front of them. As a result of the Defendants' conduct, the march was halted.

28. On November 30, 2011, at approximately 4:45 in the morning, Deputy Commissioner Bethel ordered the termination of the protest march. Upon information and belief,

Defendant Deputy Commissioner Bethel received those orders from Defendant Police Commissioner Ramsey.

29. Defendant Captain William Fisher ordered the marchers, including Plaintiff, onto the sidewalk on the east side of the street. Defendant Captain Fisher announced that if anyone did not comply with the order to move to the sidewalk they would be arrested. Complying with the Order, Plaintiff and others moved from the street to the sidewalk on the east side of the street.  At that point, Plaintiff was surrounded by Defendant police officers, both named and not yet identified, on bicycles. Plaintiff was corralled against the wall of a building and unable to move. The marchers on the west side of the street were not corralled by police, but rather dispersed by force and intimidation.

30. The Defendant Philadelphia police officers upon orders from Defendants, Commissioner Ramsey, Deputy Commissioner Bethel, Captain William Fisher, and other unnamed Defendants falsely arrested Plaintiff and others.

31. In violation of his First, Fourth, and Fourteenth Amendment rights, Plaintiff was handcuffed and taken into custody. Plaintiff was charged with failure to disperse as a misdemeanor of the second degree, obstructing the highway as a misdemeanor of the third degree, and criminal conspiracy, a misdemeanor of the second degree. Plaintiff was falsely arrested, processed and held over twenty-four hours in police custody and released on bail.

32. All of the aforementioned actions taken by each of the Defendants in this matter were taken under color of state law.

33. As a direct and proximate result of the Defendants' actions, Plaintiff was deprived of rights, privileges and immunities under the First, Fourth, and Fourteenth Amendments to

the United States Constitution and, in particular, the right to be free from retaliatory conduct against protected speech and assembly, the right to be free from excessive force, the right to be free from unlawful arrest, the right to be free from malicious prosecution, and the right to due process of law.  Plaintiff was similarly deprived of the right not to be the victim of conspiracies of state actors to violate the aforementioned clearly established rights.

34. The actions and/or inactions of the Defendants violated the clearly established federal constitutional rights of Plaintiff to freedom from retaliation against protected speech and assembly, freedom from the use of excessive, unreasonable, and unjustified force against their person, the right to be free from false arrest and malicious prosecution, and the right to due process of law.

35. As a direct and proximate result of the actions and/or inactions of the Defendants in this matter, Plaintiff has suffered physical pain, substantial and potentially permanent physical injury, loss of liberty, anxiety, fear, mental harm, and financial loss.

36. On April 26, 2012, Plaintiff was acquitted of all charges.

## COUNT I

### *42 U.S.C. § 1983: Retaliation Against Protected Speech and Assembly* <u>Against All Individual Defendants</u>

37. Paragraphs 1 through 36 are incorporated herein by reference as though fully set forth.

38. Plaintiff was damaged and injured as set forth above under 42 U.S.C. § 1983 by Defendants in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.   More specifically, Defendants took retaliatory action against Plaintiff that was intended to violate their clearly established constitutional rights to protected speech and assembly.   The actions taken by Defendants adversely affected Plaintiff's protected speech and assembly rights.

39. Defendants, by their actions including, but not limited to, terminating the protest march, and falsely arresting Plaintiff, denied Plaintiff his individual right to free expression to demonstrate, march, and gather in protest, and to express his individual political views on matters of great public concern.

40. The actions of the Defendants in terminating the protest march, and falsely arresting Plaintiff, had a chilling effect on the Plaintiff's free speech and assembly rights under the First Amendment.   The Defendants by their conduct in terminating the Plaintiff's protest march, acted with deliberate indifference towards the Plaintiff's individual First Amendment rights.

41. As a direct and proximate cause of the Defendants' unlawful actions, there was a chilling effect on the Plaintiff's future free speech and assembly rights protected by the First Amendment of the United States Constitution.

42. As a direct and proximate cause of the Defendants' unlawful actions, Plaintiff suffered emotional distress, pain and suffering, as well as financial loss, which will be established as trial.

## COUNT II

### *42 U.S.C. § 1983: Excessive Force*
### Against All Individual Defendants

43. Paragraphs 1 through 42 are incorporated herein by reference as though fully set forth.

44. Plaintiff was damaged and injured as set forth above under 42 U.S.C. § 1983 by Defendant Officers in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.   More specifically, Defendant Officers intentionally acted to cause a harmful and/or offensive contact with Plaintiff's persons and such actions were the actual and proximate cause of Plaintiff's harm.

## COUNT III

### *Supplemental State Law Claim: Battery*
### Against All Individual Defendants

45. Paragraphs 1 through 44 are incorporated herein by reference as though fully set forth.

46. Plaintiff was damaged and injured as set forth above by Defendant Officers in that they intentionally acted to cause a harmful and/or offensive contact with Plaintiff's persons and such actions were the actual and proximate cause of Plaintiff's harm.

## COUNT IV

### *42 U.S.C. § 1983: Assault*
### Against All Individual Defendants

47. Paragraphs 1 through 46 are incorporated herein by reference as though fully set forth.

48. Plaintiff was damaged and injured as set forth above under 42 U.S.C. § 1983 by Defendant Officers in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.   More specifically, Defendant Officers intentionally placed Plaintiffs in reasonable apprehension of imminent harmful and/or offensive bodily contact, and Defendants' actions were the actual and proximate cause of Plaintiff's harm.

## COUNT V

### *Supplemental State Law Claim: Assault*
### Against All Individual Defendants

49. Paragraphs 1 through 48 are incorporated herein by reference as though fully set forth.

50. Plaintiff was damaged and injured as set forth above by Defendant Officers in that they intentionally placed Plaintiff in reasonable apprehension of imminent harmful and/or offensive bodily contact, and Defendants' actions were the actual and proximate cause of Plaintiff's harm.

15

## COUNT VI

### *42 U.S.C. § 1983: Unlawful Arrest*
### Against All Individual Defendants

51. Paragraphs 1 through 50 are incorporated herein by reference as though fully set forth.

52. Plaintiff was damaged and injured as set forth above under 42 U.S.C. § 1983 by Defendant Officers in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.  More specifically, Defendant Officers acted with the intent to arrest Plaintiff unlawfully, without probable cause, and against Plaintiff's will, and such actions were the actual and proximate cause of Plaintiff's confinement.

## COUNT VII

### Supplemental State Law Claim: *False Imprisonment*
### Against All Individual Defendants

53. Paragraphs 1 through 52 are incorporated herein by reference as though fully set forth.

54. Plaintiff was damaged and injured as set forth above by Defendant Officers in that they acted with the intent to confine Plaintiff unlawfully and against Plaintiff's will, and such actions were the actual and proximate cause of Plaintiff's confinement.

## COUNT VIII

### *42 U.S.C. § 1983: Unjustified Search*
### Against All Individual Defendants

55. Paragraphs 1 through 54 are incorporated herein by reference as though fully set forth.

56. Plaintiff was damaged and injured as set forth above under 42 U.S.C. § 1983 by Defendant Officers in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.   More specifically, Defendant Officers conducted unlawful searches of Plaintiff's persons and such actions were the actual and proximate cause of Plaintiff's harm.

## COUNT IX

### *42 U.S.C. § 1983: Malicious Prosecution*
### Against All Individual Defendants

57. Paragraphs 1 through 56 are incorporated herein by reference as though fully set forth.

58. Plaintiff was damaged and injured as set forth above under 42 U.S.C. § 1983 by Defendant Officers in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.   More specifically, Defendant Officers seized and arrested Plaintiff and instituted criminal proceedings against Plaintiff without probable cause and with malice.   These proceedings terminated in favor of Plaintiff.   Defendants' conduct was the direct and proximate cause of Plaintiff's harm.

## COUNT X

### *Supplemental State Law Claim: Malicious Prosecution*
### Against All Individual Defendants

59. Paragraphs 1 through 58 are incorporated herein by reference as though fully set forth.

60. Plaintiff was damaged and injured as set forth above by Defendants in that they instituted criminal proceedings against Plaintiff without probable cause and with malice and where such proceedings were terminated in favor of the Plaintiff.

## COUNT XI

### 42 U.S.C. § 1983: *Conspiracy*
### Against All Individual Defendants

61. Paragraphs 1 through 60 are incorporated herein by reference as though fully set forth.

62. Plaintiff was damaged and injured as set forth above under 42 U.S.C. § 1983 by Defendants in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.  More specifically, Defendants, acting in concert and conspiracy, committed acts in violation of the Plaintiff's Constitutional Rights and against the laws of Pennsylvania.  The Defendants acted in conspiracy to violate the Plaintiff's Constitutional Rights as stated in the above paragraphs, and made statements among themselves and others in order to conceal their unlawful and unconstitutional conduct.  Such actions were the direct and proximate cause of Plaintiff's harm.

## COUNT XII

### Supplemental State Law Claim: Conspiracy
### Against All Individual Defendants

63. Paragraphs 1 through 62 are incorporated herein by reference as though fully set forth.

64. Defendant Officers acting in concert and conspiracy, committed acts in violation of the Plaintiff's Constitutional Rights and against the laws of Pennsylvania.  The Defendant Officers made statements among themselves and others in order to conceal their unlawful and unconstitutional conduct.

## COUNT XIII

### Supplemental State Law: Intentional Infliction of Emotional Distress
### Against All Individual Defendants

65. Paragraphs 1 through 64 are incorporated herein by reference as though fully set forth.

66. Plaintiff was damaged and injured as set forth above by Defendant Officers in that they intentionally and/or recklessly caused Plaintiff severe emotional distress by their extreme and outrageous conduct.

## COUNT XIV

### Supplemental State Law Claim: Negligent Infliction of Emotional Distress
### Against All Individual Defendants

67. Paragraphs 1 through 66 are incorporated herein by reference as though fully set forth.

68. Plaintiff was damaged and injured as set forth above by Defendant Officers in that they negligently caused Plaintiff severe emotional distress by their extreme and outrageous

conduct and where Plaintiff's emotional distress resulted in the manifestation of physical symptoms.

**COUNT XV**

*42 U.S.C. § 1983: Monell*
**Against Defendant City of Philadelphia**

69. Paragraphs 1 through 68 are incorporated herein by reference as though fully set forth.

70. Prior to November 30, 2011, the City of Philadelphia, including Defendant Police Commissioner Ramsey as a policy maker, developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of individuals during the course of protests that caused a violation of Plaintiff's rights.

71. Defendant, City of Philadelphia, as a matter of policy and practice and/or custom has with deliberate indifference, failed to adequately and properly investigate claims that the police had wrongfully arrested individuals during the course of demonstrations, in this case, Plaintiff, who was engaged in a peaceful protest march. This policy and practice caused the Defendant officers in this case to engage in the unlawful conduct described above.

72. Defendant, City of Philadelphia, as a matter of policy and practice and/or custom has with deliberate indifference, failed to adequately and properly supervise and train police officers, including the Defendants in this case, regarding the constitutional rights of protestors, thereby failing to adequately discourage further constitutional violations on the part of its police officers.  The City of Philadelphia did not require appropriate in-service training or retraining of its officers who were known to have engaged in false arrests of protestors protected by the First Amendment.  The failure to properly supervise

20

and train the Defendant police officers including the Defendants in this case, caused the Defendant officers to engage in the unlawful conduct described above.

73. Defendant, City of Philadelphia, as a matter of policy and practice and/or custom has with deliberate indifference, failed to adequately and properly discipline and sanction police officers, including the Defendants in this case, regarding the constitutional rights of protestors, thereby failing to adequately discourage further constitutional violations on the part of its police officers.  The City of Philadelphia failed to discipline and sanction those officers engaged in conduct which violated the First Amendment rights of protestors, thereby causing and encouraging police, including the Defendants in this case, to engage in the unlawful conduct described above.

74. As a result of the above-described policies and customs, police officers of the City of Philadelphia, including the Defendant officers, believe that their actions would not be properly monitored by supervisory officers and that their misconduct would not be investigated or sanctioned, but rather would be tolerated.

75. The above-described policies and customs demonstrate a deliberate indifference on the part of the policymakers of the City of Philadelphia, to the constitutional rights of persons within the City of Philadelphia, including those exercising their First Amendment rights, and therefore, caused the violation of Plaintiff's rights alleged herein.

76. As a direct and proximate cause of the Defendants' unlawful actions, Plaintiff suffered emotional distress, pain and suffering and financial loss, which will be established as trial.

## DAMAGES

77. Paragraphs 1 through 76 are incorporated herein by reference as though fully set forth.

78. As a result of the above actions and claims, Plaintiff demands judgment against all defendants in the amount of all damages, including:

  a.  compensatory damages;

  b.  punitive damages;

  c.  interest;

  d.  injunctive relief;

  e.  such other relief as appears reasonable and just; and

  f.  reasonable attorney fees and costs under 42 U.S.C. § 1988.


Respectfully submitted,

_____
Lloyd Long III, Esquire


Attorney for Plaintiff